UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00242-MR

BRUCE ARMITAGE, )
)
         Plaintiff, )
)
vs. ) **MEMORANDUM OF**
) **DECISION AND ORDER**
NANCY A. BERRYHILL, )
Acting Commissioner of Social )
Security )
)
         Defendant. )
_____ )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 13].

## I.    PROCEDURAL BACKGROUND

The Plaintiff, Bruce Armitage ("Plaintiff"), asserts that his post-traumatic stress disorder, bipolar disorder, and attention deficit disorder constitute severe impairments under the Social Security Act (the "Act") rendering him disabled. On April 1, 2013, the Plaintiff filed an application for disability benefits under Title II and supplemental security income under Title XVI of the Act, alleging an onset date of January 31, 2013. [Transcript ("T.") at 354]. The Plaintiff's application was denied initially and upon

1

reconsideration. [T. at 237, 252]. Upon Plaintiff's request, a hearing was held on September 11, 2014 before an Administrative Law Judge ("ALJ"). [T. at 86, 180]. Present at the hearing were the Plaintiff; Leah Broker, Plaintiff's attorney; and a vocational expert ("VE"). [T. at 88]. On September 25, 2014, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 210-27]. On October 23, 2014, the Plaintiff requested that the Appeals Council review the ALJ's decision. [T. at 297]. The Appeals Council granted this request. [T. at 298]. On March 13, 2016, the Appeals Council vacated the decision of the ALJ and remanded the case for further consideration of the opinion from Matthew J. Berndt, State Hearing Officer in the Hearings and Appeals Section of the State of North Carolina Department of Health and Human Services. [T. at 233-35]. On remand, the ALJ conducted another hearing, which occurred on July 8, 2016. [T. at 44]. Present at the hearing were the Plaintiff; Leah Broker, Plaintiff's attorney; and a VE. [T. at 46]. On July 29, 2016, the ALJ issued a second decision denying Plaintiff benefits. [T. at 13-35]. On July 5, 2017, the Appeals Council denied Plaintiff's request for review of the ALJ's Decision, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 3-6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's

decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied

4

regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her

5

past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at step five.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, January 31, 2013. [T. at 18]. At step two, the ALJ found that the Plaintiff has the following severe impairments: bipolar disorder, post-traumatic stress disorder, and attention deficit disorder. [Id.]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or

6

medically equals the Listings. [Id. at 19]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform a full a full range of work at all exertional levels but with the following nonexertional limitations: only capable of performing and maintaining concentration for only simple, routine, repetitive tasks for two hour segments; cannot have any public interaction; restricted to work that does not require more than occasional interaction with supervisors or co-workers; and only be able to adapt to infrequent and routine changes in a work setting.

[Id. at 20].

At step four, the ALJ identified Plaintiff's past relevant work as a waiter, steam cleaner and pressure washer of a stove and hood, and a helper position. [Id. at 34]. The ALJ, in comparing the Plaintiff's RFC to his past work, found that the Plaintiff "is able to perform work as a steam cleaner as it is generally performed." [Id.].

After making a determination adverse to the Plaintiff at step four, the ALJ then made alternative findings at step five "because there are other jobs existing in the national economy that he is able to perform." [Id.]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including auto detailer, dishwasher, and building cleaner. [Id. at 34-5]. The ALJ

7

therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from January 31, 2013, the alleged onset date, through July 29, 2016, the date of the ALJ's decision. [Id. at 35].

## V. DISCUSSION[1]

In this appeal, the Plaintiff argues, *inter alia*, that the ALJ erred in failing to properly consider the medical and opinion evidence of record. Specifically, he argues that the ALJ failed to follow the correct legal standard in evaluating the opinions of Mindy E. Pardoll, Psy. D., Jack Stahlman, NP, Frank L. Russo, NP, Carol Bowen Tourville, LCSW, and Rachel Weiss, LCAS, LCSW. [See Doc. 11 at 4-12]. This incomplete analysis, Plaintiff contends, led to an incomplete or inaccurate assessment of his abilities, which in turn resulted in an unsubstantiated RFC. [Id. 12-3].

Medical opinions are statements from physicians and psychologists "that reflect judgments about the nature and severity of an individual's impairment(s), including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p. The statements may be submitted by acceptable medical sources, including treating sources and consultative examiners.

---

[1] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

SSR 96-5p. "A medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider together with all of the other relevant evidence (including other medical source statements that may be in the case record) when assessing an individual's RFC.... Adjudicators must weigh medical source statements under the rules set out in 20 C.F.R. 404.1527 and 416.927, <u>providing appropriate explanations for accepting or rejecting such opinions</u>." SSR 96-5p (emphasis added). Sections 404.1527 and 416.927 set out the factors an ALJ is to consider in deciding the weight to give any medical opinion. Further, Ruling 96-8p provides that "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p.

In formulating an RFC the ALJ "may use evidence from 'other sources,' as defined in 20 CFR 404.1513(d) and 416.913(d), to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03p. These other sources include, but are not limited to, nurse practitioners, physician assistants, licensed clinical social workers, and physical therapists. <u>Id.</u>; <u>Craig v. Charter</u>, 76 F.3d 585, 590 (4th Cir. 1996). Information from "other sources" "may be based on special

knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p. As such, they "are important and should be evaluated on key issues such as impairment severity and functional effects." SSR 06-03p.

"Other sources" are not considered "acceptable medical sources" for purposes of the Regulations. 20 C.F.R. §§ 404.1513(a), (d). "The evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." SSR 06-03p. Under certain circumstances, the opinion of a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source. Id. For instance, the opinion of a medical source that is not an "acceptable medical source" may be given more weight if he or she has seen the individual more often than the treating source and has provided better supporting evidence and a better explanation for his or her opinions. Id. The ALJ

> generally should explain the weight given to opinions from these 'other sources,' <u>or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.</u> In addition, when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons in

the notice of decision in hearing cases…, if the determination is less than fully favorable.

SSR 06-03p (emphasis added).

In this case, the ALJ gave "great weight" to the opinions of the State Agency physicians and psychologists as "these opinions are supported by medical signs findings and consistent with the other medical evidence of record." [T. at 29]. The ALJ then gave "little weight" to the opinions of:

> Dr. Pardon [sic], Nurses Stahlman and Russo[,] and LCSW Weiss as the claimant reported "doing well" at numerous visits to sources; opinions are inconsistent with other substantial medical evidence of record; is inconsistent with the [Plaintiff's] benign clinical presentations, conservative treatment and objective tests and scans; opinions are based heavily on self-reports; and opinions are inconsistent with the [Plaintiff's] activities of daily living.

[Id.]. The ALJ, however, does not cite to any specific treatment notes or other evidence of record to support these conclusory assertions. While the ALJ generally discussed the objective evidence of record [see T. at 21-9], the ALJ made no attempt to provide any explanation as to how the evidence in the record supports each of his conclusions, citing specific medical facts and non-medical evidence, which "build[s] an accurate and logical bridge from the evidence to [its] conclusion." Monroe, 826 F.3d at 189.

Furthermore, the ALJ's recitation of the record evidence offers no insight into how the opinion findings ultimately informed the Plaintiff's RFC

11

assessment. For example, the ALJ gave "great weight" to the State Agency psychologists [T. at 29] who opined that the Plaintiff has only mild limitations in activities of daily living. [T. at 179, 200]. Within the same paragraph, however, the ALJ assigned "little weight" to the other medical source opinions of record because they were in part "inconsistent with the [Plaintiff's] activities of daily living." [T. at 29]. But in the next paragraph, in assessing the Plaintiff's credibility, the ALJ discounted the Plaintiff's restrictions in daily living as "appear[ing]… voluntary in nature." [T. at 30]. This appears to contradict the ALJ's earlier finding that the Plaintiff "has moderate restrictions of his activities of daily living." [T. at 19]. The ALJ says nothing that appears to resolve these apparent inconsistencies. This and the ALJ's failure to specifically state what treatment history or evidence contradicts a particular medical opinion leaves "the analysis [ ] incomplete and precludes meaningful review." Monroe, 826 F.3d at 190. As such, the Court is unable to effectively review the ALJ's conclusions regarding the weight assigned to the medical source opinions of record.

Because the Court cannot determine whether the ALJ properly evaluated the medical source opinions of record, the Court cannot say that the Plaintiff's RFC was properly addressed or that the ALJ's ultimate decision was supported by substantial evidence. See Patterson v. Comm'r of Soc.

Sec. Admin., 846 F.3d 656, 662 (4th Cir. 2017). For the reasons stated, the Court concludes that a remand is required.[2]

### ORDER

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED**, and that the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**. Pursuant to the power of this Court to enter a judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and this case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: September 26, 2018

Martin Reidinger
United States District Judge

---

[2] In light of this decision remanding the case for further administrative proceedings, Plaintiff's remaining assignments of error need not be addressed but may be raised by him on remand.